**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

CHARLES A. WINSTON,
ADC #84733                                                                                                    PLAINTIFF

V.                              CASE NO. 2:12CV00147 DPM/BD

GREG HARMON, *et al.*                                                                              DEFENDANTS


**REPORT AND RECOMMENDATION**

**I.     Procedures for Filing Objections:**

This Report and Recommendation ("Recommendation") has been sent to the presiding judge in this case, United States District Judge D.P. Marshall Jr. The court, on its own motion, can consider summary judgment, even when no party has filed a motion. See FED.R.CIV.P. 56(f)  In this case, the Recommendation is that summary judgment be granted to the Defendants, even though there is no pending motion for summary judgment.

The Recommendation sets out the material facts in this case that the Court believes are undisputed based on the testimony and documents the parties offered at a hearing held on September 26, 2014.  Any party may respond to this Recommendation by filing objections.  Objections must be specific and must set out the material facts that the party believes to be in dispute.  In other words, if a party objects to a factual finding included in this Recommendation, the party must identify the finding of fact that he or she believes to be wrong and describe the evidence that contradicts that finding.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.    Background:

Charles Winston brought this lawsuit pro se, alleging that his constitutional rights were violated while he was housed at the East Arkansas Regional Unit ("EARU") of the Arkansas Department of Correction ("ADC"). (Docket entries #2, #4) Specifically, he claims that the Defendants were deliberately indifferent to his safety by inadequately staffing the barracks, and that Defendant Harris retaliated against him for filing a grievance about the alleged understaffing.

Defendants previously moved for judgment on the pleadings. The Court dismissed Mr. Winston's claims for money damages against the Defendants in their official capacities, as well as his claims for compensatory damages and injunctive relief.

Defendants recently moved for a new dispositive motions deadline. Because this case is scheduled for jury trial on December 15, 2014, however, setting a new, last-minute deadline was not practical. The Court, however, scheduled this matter for a hearing to determine whether there were disputed issues of material facts.

The hearing was held on September 26, 2014. Mr. Winston and his court-appointed counsel[1] were present. Mr. Winston testified at the hearing, as did Defendants Harmon and Harris.

Based on cross examination by Mr. Winston's attorney, the Court directed the Defendants to produce staffing logs for the dates at issue. Defendants have now produced those logs, and they have been reviewed by all parties. The parties have stipulated that the logs are consistent with the testimony at the hearing, and that the control-booth logs do not create any disputed material facts. (#80)

Based on the undisputed evidence presented at the hearing and the parties' stipulation (#80), the Court recommends that Judge Marshall grant summary judgment on the court's own motion and that Mr. Winston's claims be DISMISSED, with prejudice.

---

[1] The Court appointed Genoveva Gilbert, an attorney with Kutak Rock LLP, to represent Mr. Winston in this case. At the hearing, Mr. Winston expressed his satisfaction with Ms. Gilbert's representation.

**III.    Discussion:**

    A.    Deliberate Indifference

Deliberate indifference to inmate safety involves two elements: first, a showing that the defendant official was aware of facts from which he or she should have inferred that there was a substantial risk of serious harm to an inmate; and second, that the defendant drew that inference but disregarded the danger. *Fields v. Abbott*, 652 F.3d 886, 892 (8th Cir. 2011) (quoting *Hart v. City of Little Rock*, 432 F.3d 801, 806 (8th Cir. 2005)); see also *Berry v. Sherman*, 365 F.3d 631, 634 (8th Cir. 2004) (same).

Mr. Winston was assigned to barrack 15 of the North Hall at the EARU at all times relevant to this lawsuit. He alleges that he was attacked by a fellow inmate in March of 2009, due to inadequate staffing.[2] That attack is not directly at issue in this lawsuit; rather, the claims here involve Mr. Winston's allegations that understaffing in the barracks of the North Hall of the EARU created a "pervasive risk of harm," and his allegations that Defendant Harris retaliated against him for complaining about understaffing.

It is undisputed that Mr. Winston filed grievances about understaffing on August 4 and 12 of 2009, that is, several months after his alleged attack in March of that year. Mr.

---

[2] Even though there is no incident report about the attack, the Defendants did not seriously dispute that Mr. Winston was kicked and punched by another inmate in March of 2009. For purposes of this Recommendation, then, the Court will assume that Mr. Winston was assaulted by another inmate in March of 2009.

Winston says that he complained about the inadequate staffing to both Defendants, but that they did nothing to remedy the problem.

At the hearing, all parties agreed on the layout of EARU. It includes three halls – the North Hall, the South Hall, and the East Hall. At all times relevant to this lawsuit, Mr. Winston was housed in the North Hall. The North Hall includes four barracks – barracks 13, 14, 15, and 16. Each barrack holds up to fifty inmates. Mr. Winston was housed in barrack 15 at all relevant times.

Two control booths are used to monitor the four barracks in the North Hall. One control booth is located between barracks 13 and 15; the other control booth is located between barracks 14 and 16. A hallway separates barracks 13 and 15 from barracks 14 and 16. The walls between paired barracks and the walls between the barracks and the hallway are transparent.

According to ADC policy, the control booths are deemed "critical posts," meaning they must be "manned" at all times. The booths in the North and East Halls are considered manned, however, so long as at least one guard is present in one of the two booths. Stated another way, it is not necessary that an officer be present in each of the control booths on the North and East Halls, under the ADC staffing policy.[3] This is because the walls are transparent, allowing one officer to see into all four barracks in each

---

[3] According to the undisputed evidence, if only one officer is "manning" both control booths and needs to be relieved for any reason, that officer must wait for a back-up officer before leaving the booth.

of those halls. It is undisputed that if a problem occurs in a barrack, such as an attack by one inmate on another, control-booth officers are not permitted to go into the barrack, but rather, must radio for help.

It is undisputed that the ADC, including the EARU, experienced staffing shortages during the time period at issue here; but, it is also undisputed that critical posts at the EARU were always manned in accordance with ADC staffing requirements. That is to say, there was always at least one officer present in at least one of the control booths in the North Hall where Mr. Winston lived.

Defendant Harmon testified and presented documents showing that the EARU maintained its accreditation throughout the time at issue. He also testified that the accrediting entity knew of and approved the policy allowing one officer to supervise barracks 13, 14, 15, and 16 in the North Hall. There is no evidence to contradict these facts.

Mr. Winston testified that he believed that the policy of allowing only one officer to supervise 200 inmates created a pervasive risk of harm, but he could not recall whether he ever discussed this issue with either Defendant Harris or Harmon prior to filing his first grievance on August 6, 2009. It is undisputed that Mr. Winston did not raise this issue in any grievance prior to August 6, 2009. Moreover, Defendants Harris and Harmon testified that Mr. Winston did not raise this issue with either of them prior to

August of 2009. Furthermore, they did not receive any complaints regarding inadequate staffing of the barracks in the North Hall from any other inmate or staff member.

At the hearing, the parties presented evidence regarding the history of violence in the North Hall. Defendant Harris testified that she was not aware of any inmate incidents in barrack 15 from January through August 2009. From January through August 2009, no incident reports were filed regarding any altercations in barrack 15.

Furthermore, from January through August of 2009, only two incident reports were filed regarding inmate altercations in any of the barracks on the North Hall. Neither Defendant was aware of either of those incidents, and neither incident involved Mr. Winston.

Finally, on the dates in August when Mr. Winston filed grievances about understaffing, there were officers assigned to both control booths in the North Hall. The only reason that one of those officers would have left the control booth would have been during a mass movement of inmates; that is, when inmates were out of the barracks attending classes, work assignments, yard call, or other activities. It is undisputed that no incident occurred on either of those August dates.

Based on this undisputed evidence, the Defendants did not act with deliberate indifference to Mr. Winston's safety. Mr. Winston has failed to present any evidence that either Defendant was aware of any risk of harm that was posed by allowing one officer to supervise barracks 13, 14, 15, and 16 in the North Hall. According to the undisputed

evidence, there was no history of substantial violence in the barracks at issue, and the EARU maintained its accreditation at all times relevant to this lawsuit. As noted, the records reflect that there was a guard assigned to each control booth on the dates of Mr. Winston's grievances. Therefore, Mr. Winston has failed to create a genuine issue of material fact, and the Defendants are entitled to judgment as a matter of law.

B. Retaliation

Mr. Winston claims that after he wrote an emergency grievance complaining of understaffing in the barracks of the North Hall in the EARU, Defendant Harris threatened to move him to the South Hall in retaliation for his filing a grievance. Mr. Winston maintains that moving an inmate to the South Hall is "punishment in and of its self" because the South Hall is "violent, loud, filt[h]y and not fitting for an inmate of my medical class and temperment [sic]." (#4 at p.4)

The mere threat of retaliation is considered a "sufficient injury if made in retaliation for an inmate's use of the grievance procedure." *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994). The test for determining whether there was a threat of retaliation is whether a defendant's acts or statements "would chill a person of ordinary firmness from continuing in the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (2004)).

At the hearing, Mr. Winston testified that after he submitted his grievance complaining about the assignment of only one officer to supervise all four barracks in the

North Hall at the EARU, Defendant Harris called him to the count room[4] to discuss the issue. According to Mr. Winston, Defendant Harris stated, "I can solve this problem by moving you to the South Hall. I'm going to put you in a place where you'll feel safe." Defendant Harris then told Mr. Winston to return to his barracks and pack his belongings. Mr. Winston explains that he then tore up his copy of the grievance and attempted to retrieve the ADC's copy of the grievance from Sergeant Carnes so that he would not be moved.[5] Mr. Winston testified that once he felt that he was "out of harm's way," he pieced his copy of the grievance back together and resubmitted the grievance.

Shortly after Defendant Harris spoke to Mr. Winston regarding a possible transfer to the South Hall, Mr. Winston filed three additional grievances regarding the alleged understaffing at the EARU, including a grievance against Defendant Harris. Since August 2009, Mr. Winston has filed over 150 grievances.

Based on the undisputed evidence, no reasonable jury could conclude that Defendant Harris retaliated against Mr. Winston for filing grievances regarding staffing levels. Mr. Winston testified that Defendant Harris dislikes him because of his active participation in the grievance process, and that he believes that she was hoping that he

---

[4] The count room is the administrative area where inmates are counted and a diagram of inmates' bed assignments is maintained. Defendant Harris testified that she brought inmates into the count room to address complaints in order to isolate the inmate.

[5] An ADC grievance form is a two-ply form that includes a blue copy and a yellow copy. The blue copy is turned in to the unit problem solver and the yellow copy is kept by the inmate.

would tear up his understaffing grievance, his subjective beliefs do not create a question of material fact.

Here, the undisputed evidence shows that when Mr. Winston complained about the staffing problem in the North Hall, Defendant Harris said she would move him to the South Hall as a solution to the problem.  Like the North Hall and the East Hall, the South Hall includes four barracks.  But unlike the North and East Halls, the South Hall houses more inmates, and inmates housed there tend to have a more violent history and lower prison classifications.  In fact, it is undisputed that the South Hall is a less desirable place to live than either the North or East Halls.

That said, in the four barracks of the South Hall, both control booths are always manned, meaning that two officers are always on duty in the South Hall.  Defendant Harris offered to move Mr. Winston to the only hall where there were always two officers monitoring the four barracks.

By contrast, as noted, the barracks in the North and East Halls are considered sufficiently staffed so long as at least one officer is present to supervise four barracks. Mr. Winston specifically complained about the practice of allowing one officer to guard four barracks, so the only option Defendant Harris could have offered was to transfer him to the South Hall.  It is undisputed that she did not have the power to change the prison's staffing policy.

Moreover, the fact that Mr. Winston filed nearly 150 grievances after his conversation with Defendant Harris militates heavily against a finding that Defendant Harris's response to Mr. Winston's grievance would chill a person of ordinary firmness from participating in the grievance procedure. For both of these reasons, Mr. Winston's retaliation claim fails as a matter of law. Defendant Harris is entitled to summary judgment on Mr. Winston's retaliation claim.

The parties were informed at the close of the hearing that, unless the control-booth logs contradicted the Defendants' testimony at the hearing, the Court would file a recommendation that summary judgment be granted in favor of the Defendants on both claims remaining in the lawsuit.

## IV.   Conclusion:

For reasons explained above, the Court recommends that Mr. Winston's claims be DISMISSED, with prejudice.

DATED this 3rd day of October, 2014.

_____
UNITED STATES MAGISTRATE JUDGE